## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**WANDA INEZ DAVIS**                                  *
                                                      *
**v.**                                                *       **Civil No. JKS-11-2763**
                                                      *
**MICHAEL J. ASTRUE**                                 *
**Commissioner of Social Security**                   *
                                                      *

### MEMORANDUM OPINION

Plaintiff Wanda Inez Davis brought this action pursuant to 42 U.S.C. § 405 for review of

a final decision of the Commissioner of Social Security (Commissioner) denying her claim for

disability insurance benefits (DIB) under the Social Security Act (the Act).  Both parties'

motions for summary judgment are ready for resolution and no hearing is deemed necessary.  *See*

Local Rule 105.6.  For the reasons set forth below, Ms. Davis's motion for summary judgment is

denied and the Commissioner's motion for summary judgment is granted.

1.  **Background.**

Ms. Davis applied for DIB on December 20, 2006, *see* R. 108-10, claiming that she had

been unable to work since October 24, 2005, *see* R. 124, due to fibromyalgia, diabetes,

hypertension and concentration problems.  R. 145, 187.  Her claim was denied initially, *see* R.

72-74, and on reconsideration.  R. 79-80.  She then requested a hearing before an Administrative

Law Judge (ALJ).  R. 81.  A hearing was conducted on January 7, 2009.  R. 32-57.  Using the

sequential evaluation process, the ALJ determined that Ms. Davis was not disabled within the

meaning of the Act.  R. 15-31.  Ms. Davis requested that the Appeals Council review the ALJ's

decision.  R. 11.  The Appeals Council denied the request for review, thus, the ALJ's

determination became the Commissioner's final decision.  R. 1-5.

## 2. **ALJ's Decision.**

The ALJ evaluated Ms. Davis's claim using the five-step sequential process set forth in 20 C.F.R. § 404.1520.[1]  At the first step of the sequential evaluation process, the ALJ found that Ms. Davis had not engaged in substantial gainful activity since the alleged onset date of October 24, 2005.  R. 17.  Second, the ALJ found that Ms. Davis suffered from fibromyalgia, carpal tunnel syndrome and anxiety, and concluded that these ailments qualified as severe impairments because they significantly limited her ability to do basic work activities.  20 CFR 404.1521. However, the ALJ did not find Ms. Davis's statements concerning the intensity, persistence and limiting effects of her symptoms to be credible.  R. 26.  At step three, the ALJ found that Ms. Davis's ailments did not meet any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 26.  At step four, the ALJ determined that Ms. Davis had the residual functional capacity to perform light work,[2] and could not perform her past relevant work as a high school English teacher.  R. 28-29.  With the benefit of vocational expert testimony, the ALJ found that Ms. Davis could perform other work existing in significant numbers in the national economy, including table worker, laundry worker, machine tender, visual inspector or sorting worker. R 29-30.  She was, therefore, found not disabled within the meaning of the Act.  R. 30.

---

[1] Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity.  20 CFR 404.1520(b).  At step two, the ALJ must decide whether the claimant has a medically determinable impairment that is "severe."  20 CFR 404.1520(c).  At step three, the ALJ is required to determine whether the claimant's impairment meets the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  20 CFR 404.1520(d), 404.1525, and 404.1526.  At step four, the ALJ must determine the claimant's residual functional capacity, *see* 20 CFR 404.1520(e), and decide whether the claimant can perform the requirements of her past relevant work.  20 CFR 404.1520(f).  Finally, at step five, the ALJ must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience.

[2] The ALJ noted, however, that she could not climb ropes, ladders or scaffolds; could only stoop occasionally; could stand and walk for 15-20 minutes; could sit for one hour; should avoid using her fingers for anything more than finger pecking a computer or minimal handwriting; and should perform unskilled tasks involving no more than occasional contact with co-workers, supervisors or the public.  R. 28.

3. **Standard of Review.**

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co, v. NLRB*, 305 U.S. 197, 229 (1938)).  It is more than a scintilla, but less than a preponderance, of the evidence presented.  *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence.  *Id.*

4. **Discussion.**

Ms. Davis argues that the court should reverse the ALJ's decision for the following six reasons: (1) the ALJ failed to properly evaluate her complaints of pain; (2) the ALJ failed to give sufficient reasons for discrediting her testimony; (3) the ALJ failed to properly evaluate the opinions presented by her treating physicians; (4) the ALJ erroneously assessed her residual functional capacity; (5) the ALJ failed to properly develop the administrative record; and (6) the Appeals Council failed to consider new evidence presented.

For the reasons set forth in this opinion, the court is not persuaded by Ms. Davis's arguments.  The decision of the ALJ will be affirmed.

**I.  Plaintiff's complaints of Pain**

Ms. Davis first argues that the ALJ should have credited the full extent of her subjective complaints of pain because her complaints were supported by reports from her treating physicians. ECF No. 22 at 5.  Ms. Davis alleges that intense pain in her neck, shoulders, knees

and arms prevents her from engaging in sustained employment.  R. 19.

When evaluating whether a person is disabled by subjective symptoms, an ALJ must follow a two-step process. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529.  First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual symptoms alleged. 20 C.F.R. § 404.1529(b).  If the claimant satisfies this initial threshold, then the ALJ must evaluate the extent to which these symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1).  At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c).  "The ALJ must also assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown solely by objective medical evidence." *Harris v. Astrue*, 2011 U.S. Dist. LEXIS 148692, *10 (D. Md. 2011).  "To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations." *Id.*  The ALJ's opinion should be given great weight upon review because he or she has had the opportunity to observe the demeanor and determine the credibility of the claimant.  *Shively*, 739 F.2d at 989-90.

In this case, the ALJ concluded that Ms. Davis's impairments could reasonably be expected to cause the alleged symptoms (thus satisfying the first step of the two-step process governing subjective complaints of pain) but found that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment."  R. 26.  The ALJ found that Ms. Davis had the residual functional capacity to perform light work as defined in 20 C.F.R.

404.1567(b).[3]  In reaching this conclusion, the ALJ discussed Ms. Davis's medical history.  R. 17-26.  There is substantial evidence in Ms. Davis's medical history to justify the ALJ's decision to discredit some of Ms. Davis's testimony and conclude that Ms. Davis is capable of performing light work.  This evidence is reviewed below.

Ms. Davis visited Susan Lacks, M.D., a rheumatologist, on December 2. 2005.  R. 311-12.  Dr. Lacks is Ms. Davis's treating physician.  Ms. Davis expressed to Dr. Lacks that she was experiencing poor sleep, stiffness, and joint pain.  Dr. Lacks diagnosed Ms. Davis with fibromyalgia based on her history of joint pain and stiffness.

Ms. Davis visited Dr. Lacks again on January 5, 2006.  Dr. Lacks noted that Ms. Davis "ambulated without assistive device" and her shoulders and hips had a full range of motion.  R. 18, 307.  On April 30, 2007, Dr. Lacks noted that Ms. Davis "has had further improvement" and was "walking for exercise and her legs are less painful."  R. 362.

On May 21, 2007, Ms. Davis visited Ryan Jander, M.D., an orthopedist.  R. 586.  Dr. Jander noted that Ms. Davis complained of bilateral foot pain.  *Id.*  Ms. Davis reported that her pain was intermittent, moderate in severity, and unchanged since its onset.  *Id.*  According to Ms. Davis, the pain was localized to the top halves of her feet.  *Id.*  Dr. Jander reviewed x-rays of Ms. Davis's feet and found no evidence of fracture, dislocation, or arthrosis.  *Id.* at 587.  Dr. Jander noted "some arthritis of the first MTP joint" but concluded that it was "not clinically significant."  *Id.*

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 CFR § 404.1567; *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005).

On July 3, 2007, Dr. Lacks was contacted by Dr. Milstein.  *Id.* at 505.  He asked her whether she thought Ms. Davis was physically capable of light duty work, the classification for an eighth grade teacher.  *Id.*  Dr. Lacks reported that Ms. Davis may be able to perform the activities, but she was concerned about Ms. Davis's endurance.  *Id.*

On September 10, 2007, Dr. Jander performed an MRI of Ms. Davis's left shoulder.  *Id.* at 602.  Dr. Jander concluded that there was "no full thickness tear of the cuff" but that there may be some evidence of a partial tear.  *Id.*  Dr. Jander reported that "overall, I think [the MRI] looks pretty benign."  *Id.*

On October 10, 2007, Ms. Davis visited Stuart Goodman, M.D., a neurologist, for a second opinion.  *Id.* at 448.  A neurological examination revealed a "positive Tinel's sign[4] at both wrists which is quite pronounced."  *Id.*  Her motor examination was normal.  *Id.*  Dr. Goodman diagnosed Ms. Davis with carpal tunnel syndrome.

On April 18, 2008, Ms. Davis visited Dr. David Dorin, an orthopedic surgeon, complaining of numbness, tingling and pain in her hands.  *Id.* at 564.  Upon examination, Dr. Dorin found that there was a satisfactory range of motion of the wrists and fingers.  *Id.*  He found that she did have numbness and dysesthesias, but noted that there were "no visible atrophic changes of the small muscles of the hand."  *Id.*  Dr. Dorin reviewed x-rays of Ms. Davis's hands and found that there was no evidence of arthritis, loose bodies or calcifications.  *Id.*  Dr. Dorin diagnosed carpal tunnel syndrome and recommended surgery.  *Id.*

Ms. Davis also stated that she suffered from debilitating knee problems.  Indeed, x-rays of her right knee on February 2, 2006, showed osteophytes (bone spurs) and an effusion in the

---

[4] Tinel's sign is a test that shows whether a nerve is irritated. Tinel's sign is positive when lightly banging on the nerve elicits a sensation of tingling, or "pins and needles," in the distribution of the nerve. For example, in carpal tunnel syndrome, the test for Tinel's sign is often positive, eliciting tingling in the thumb, index, and middle fingers. MedicineNet.com.  Definition of Tinel's sign.  http://www.medterms.com/script/main/art.asp?articlekey=16687.

knee (buildup of fluid in a joint), *see* R. 306, but in August 2008, Dr. Lacks noted good range in her knees and no swelling.  R. 486.  Dr. Lacks told Ms. Davis to take ibuprofen for the pain; no surgery was suggested.  R. 306.

Ms. Davis developed pain symptoms in her left shoulder as well.  Dr. Jander examined Ms. Davis regarding this pain on September 10, 2007.  Although there was some evidence of a mild partial tear and some bursitis, an MRI showed no tear of the cuff or significant atrophy of the rotator cuff musculature.  R. 602.  Dr. Jander stated that in his opinion the MRI was benign.  Dr. Dorin diagnosed significant bursitis[5] of Ms. Davis's shoulders in June 2008 and prescribed Arthrotec.  R. 554.  However, Ms. Davis told Dr. Jander in July 2008 that the injections he had given had helped her tremendously.  R. 599.  No treatment other than medication and exercise was recommended.

The ALJ also noted that Ms. Davis was independent in personal care, did light housework and small loads of laundry, was able to drive and attend church, could manage her finances and enjoyed reading and listening to the radio.  R. 25, 154-61.

In sum, there is substantial evidence, based on all of the medical evidence and Ms. Davis's self-described daily activities, to support the ALJ's conclusion that "[t]he alleged restrictions on the claimant's activities because of pain are not supported by the physical findings, reports of her daily activities, or her testimony."[6]  R. 26.  The ALJ did not doubt that Ms. Davis had "some pain and discomfort."  *Id.*  Indeed, the ALJ concurred that Ms. Davis suffered from fibromyalgia, bursitis, carpal tunnel syndrome and experienced pain in her shoulders and knees.  However, Ms. Davis's examinations consistently showed minimal

---

[5] Bursitis is the inflammation or irritation of the bursa, which is a sac filled with lubricating fluid, located between tissues such as bone, muscle, tendons, and skin; the bursa decreases rubbing, friction, and irritation.  WebMD. Arthritis and Bursitis.  http://www.webmd.com/osteoarthritis/guide/arthritis-bursitis.

[6] The ALJ did, however, include many of Davis's claimed restrictions in the RFC, including limiting use of her hands due to the pain and stiffness she alleged, restricting her to jobs with no climbing and only occasional stooping, and limiting the length of time she walks and sits.  R. 28, 39-44.

decreases in range of motion and her x-rays and MRIs were generally normal or clinically insignificant.  The ALJ considered this evidence and Ms. Davis's testimony about her normal life activities and concluded that Ms. Davis's symptoms were not as severe as alleged.  The record is replete with support for this conclusion.

## II.  Ms. Davis's Credibility

The ALJ questioned Ms. Davis's credibility for two primary reasons.  First, Ms. Davis indicated on multiple occasions in 2007 that she did not care for a child, when in fact she had adopted a six-month-old boy on October 11, 2006.  R. 26.  In a Function Report dated February 1, 2007, in response to the question, "Do you take care of anyone else such as a wife/husband, children, grandchildren, parents, friends, other," Ms. Davis answered "No."  R. 155.  Ms. Davis gave the same answer in a later Function Report on June 27, 2007.  R. 175.  In her motion for summary judgment, Ms. Davis addresses this discrepancy by arguing that, although she had a son, she did not technically "care for" the child because she had a babysitter and husband who performed all of the child rearing activities.  ECF No. 22 at 6.  Ms. Davis argues that her physical limitations prevented her from providing any care for her son.  *Id.*  Thus, according to Ms. Davis, she was not untruthful when she stated that she did not care for a child.  The ALJ found Ms. Davis's failure to mention her child to be "dissembling."  R. 26.

Second, the ALJ noted that, on June 13, 2007, Ms. Davis reported that she was planning to teach Vacation Bible School at her church.  Yet, in her Function Report dated June 27, 2007, she reported that she was forgetful, that she was not able to finish what she started and that she was apprehensive about returning to a classroom.  R. 175-81.  She also stated that she could only walk for five minutes or pay attention for five or ten minutes.  *Id.*  The ALJ found these positions to be inconsistent.

There is substantial evidence in the record to support the ALJ's decision to discredit some of Ms. Davis's testimony.  First, no matter how little Ms. Davis contributes to her son's upbringing, she should, at the very least, have acknowledged that she had a son.  Second, given Ms. Davis's repeated remarks that she was unable to work because of intense pain, it is understandable that the ALJ was startled to hear that Ms. Davis planned to teach a class at her church.  The ALJ reasonably assessed Ms. Davis's credibility, and it is not the role of a reviewing court to "make credibility determinations, or substitute our judgment for that of the ALJ."  *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).

Finally, Ms. Davis contends that it was the ALJ's responsibility to ask questions at the hearing to untangle these discrepancies.  ECF No. 22 at 6.  It is true that the ALJ has a duty to "explore all relevant facts and inquire into the issues necessary for adequate development of the record," *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986), but it is not the ALJ's duty to present Ms. Davis's case for her, nor is it the ALJ's responsibility to validate the truthfulness of every statement made at the hearing.  Ms. Davis had the opportunity, in both the function reports and her testimony when questioned by her attorney, to explain any inconsistencies in the record. The ALJ fulfilled his duty of inquiring into the issues necessary for adequate development of the record.

## III.   The Opinions of Davis's Treating Physicians

Ms. Davis argues that the ALJ inappropriately devalued the opinion provided by her treating physician, Dr. Lacks, that Ms. Davis could not perform light work.  ECF No. 22 at 8.

A court must evaluate and weigh medical opinions in light of the following non-exclusive list of factors: (1) whether the physician has examined the applicant; (2) the treatment relationship between the physician and the applicant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a

specialist.  20 C.F.R. § 404.1527 (2005).  Although "[c]ourts often accord greater weight to the testimony of a treating physician . . .  the ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence; rather, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."  *Johnson v. Barnhart*, 434 F.3d 650, 654, n.5 (4th Cir. 2005) (citations and quotation marks omitted); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) ("[I]f a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

In this case, Dr. Lacks consistently found positive tender point testing, confirming her diagnosis of fibromyalgia, but her opinion that Ms. Davis was disabled from work was not consistent with other medical records and Ms. Davis's activities of daily living.

First, Ms. Davis argues that the ALJ ignored Dr. Lacks's consistent opinion that Ms. Davis is disabled from all work due to symptoms from fibromyalgia.  ECF No. 22 at 7.  This argument fails because "[t]he determination of whether the claimant meets the statutory definition of disability is reserved to the Commissioner, even when a medical source opinion includes a statement that a claimant is 'disabled' or 'unable to work.'"  *Miller v. Callahan*, 964 F. Supp. 939, 951 (D. Md. 1997) (citing 20 C.F.R. §§ 404.1527(e)(1) and 416.927(e)(1)) and *Laws v. Celebrezze*, 368 F.2d 640, 644 (4th Cir. 1966)).

Next, Ms. Davis argues that it is "blatantly false and unsupported by the medical evidence in the record" to state that Ms. Davis's subjective complaints of pain are not supported by objective findings.  Ms. Davis contends that "Dr. Lacks has consistently documented physical exams during Ms. Davis's regular visits to her" and "has consistently noted pathology in tender point testing and has adjusted medication accordingly."  ECF No. 22 at 8.  To support her

assertion that Dr. Lacks's opinion is supported by objective medical evidence,[7] Ms. Davis points to *one document*: a letter from Dr. Lacks to the Virginia Retirement System in support of Ms. Davis's disability retirement application.  R. at 488.  Ms. Davis selects the following portion of the letter as evidence of Dr. Lacks's objective findings.

> At the time of her last visit on 5-14-08, physical exam was significant for decreased range in the cervical spine, decreased internal rotation of the left shoulder with pain, flexor tendonitis of the 3rd fingers bilaterally, crepitus in the knees and tender points at the trapezeii [sic], lateral epicondyles, trochanteric bursae and medlal [sic] fat pads of the knees; other tender points may have been present but were not sought, nor did I attempt to elicit signs of carpal tunnel syndrome.

None of these findings refutes the ALJ's conclusion that Ms. Davis could perform light work.  While this assessment is consistent with a diagnosis of fibromyalgia, this diagnosis alone is not enough to show a disability.  Ms. Davis's examinations consistently showed only minimal decreases in range of motion.  R. 302-04, 307, 362, 497, 503-04, 508, 616.  Her x-rays and MRIs were either normal or showed minimal degenerative changes.  R. 299, 596, 602.  The ALJ noted that Dr. Lacks's own reports showed that Ms. Davis had a full range of motion in the cervical spine, shoulders and hips.  R. 24.  Thus, the ALJ decided to devalue Dr. Lacks's opinion that Ms. Davis is disabled.  Substantial evidence exists in the record to support this decision.

## IV.  Assessment of Ms. Davis's Residual Functional Capacity

Ms. Davis argues that the ALJ erroneously assessed her residual functional capacity.  First, Ms. Davis asserts that the ALJ erred by "giving no credit to her testimony or subjective complaints," such as her "need for naps."  ECF No. No. 22 at 9.  It is clear, however, that the ALJ did not ignore Ms. Davis's testimony—he simply decided that the medical evidence did not support the extent of her alleged pain.  To be sure, Dr. Lacks reported that Ms. Davis suffered

---

[7] "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1529(c)(2).

from fatigue "as a manifestation of the non-restorative sleep which is characteristic of fibromyalgia," but Dr. Lacks never opined that Ms. Davis needed naps to properly function throughout the day.  R. 488.

Second, Ms. Davis argues that the ALJ ignored the results of the tender point testing conducted by Dr. Lacks and therefore wrongly assessed Ms. Davis's alleged disability.  ECF No. 22 at 9.  Again, a tender point testing scan showing that Ms. Davis has fibromyalgia does not mean that she suffers from a disability under the Act.

Finally, Ms. Davis argues that the ALJ's conclusion that she could perform light work is inconsistent with continually increased the dosages of her medications.  ECF 22 at 9.  That argument is without merit, as the medication doses were changed in response to Ms. Davis's complaints regarding symptoms and side effects, not on the basis of any objective tests showing changes in her physical condition.  R. 302-03, 307, 499, 503.  In addition, Dr. Lacks never prescribed anything stronger for pain, although Ms. Davis did take Percocet following her bone biopsy.  R. 595.  The ALJ's decision that Ms. Davis could perform light work is supported by substantial evidence.

**V.  The ALJ's Duty to Develop the Administrative Record**

Ms. Davis argues that she "was not afforded a fair determination of her disability because the ALJ refused to investigate all matters relevant to her credibility."  ECF No. 22 at 11.  As stated earlier, it is not the duty of the ALJ to dissect and validate the truthfulness of every statement made at the hearing, and a claimant is ultimately responsible for presenting her case in a complete and consistent manner.  An ALJ must detect inconsistencies to decide matters of credibility, but it is not the ALJ's responsibility to remedy these inconsistencies for the benefit of the claimant.

**VI.  Consideration of New Evidence**

Ms. Davis contends that the Appeals Council failed to adequately consider new evidence presented.  The new evidence was a document from an office visit to Dr. Lacks on October 27, 2010.  R. 4, 616.  The document shows that Ms. Davis's medication did not change; her sleeping habits improved; her shoulder and upper back pain were manageable, and her carpal tunnel syndrome was symptomatic.  R. 616.  Her physical examination and diagnoses remained unchanged.  *Id.*  The record reflects that the Appeals Council noted the new evidence.  Ms. Davis does not explain why it is material to the Appeals Council's review.  There is nothing new in this record to warrant a reversal of the ALJ's decision.

**5.  <u>Conclusion.</u>**

For the foregoing reasons, Davis's motion for summary judgment will be denied and the Commissioner's motion for summary judgment will be granted.


Date:<u> December 6, 2012          </u>                    <u>          /S/        </u>
                                                             JILLYN K. SCHULZE
                                                         United States Magistrate Judge